# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATHAN M. TEIBEL,<br><br>Plaintiff,<br><br>v.<br><br>3351 BRANDON ROAD CNT-PR, LLC; SADDLE CREEK CORPORATION d/b/a SADDLE CREEK LOGISTICS SERVICES; MORGAN/HARBOUR CONSTRUCTION, LLC; JOHN ALAN CONSTRUCTION, INC.; SCHMIDT STEEL, INC.; STATE MECHANICAL SERVICES, LLC; SULLIVAN ROOFING, INC.,<br><br>Defendants. | Case No. 1:24-cv-09459 |
| MORGAN/HARBOUR CONSTRUCTION, LLC,<br><br>Counter-Plaintiff,<br>v.<br><br>JOHN ALAN CONSTRUCTION, INC.; SCHMIDT STEEL, INC.; STATE MECHANICAL SERVICES, LLC; SULLIVAN ROOFING, INC.,<br><br>Counter-Defendants. | |
| MORGAN/HARBOUR CONSTRUCTION, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>MIDWESTERN STEEL FABRICATORS CHICAGO, LLC,<br><br>Third-Party Defendant. | |

**DEFENDANT MORGAN/HARBOUR CONSTRUCTION, LLC'S AMENDED THIRD-PARTY COMPLAINT FOR BREACH OF CONTRACT AND OTHER RELIEF AGAINST MIDWESTERN STEEL FABRICATORS CHICAGO, LLC**

Third-Party Plaintiff, MORGAN/HARBOUR CONSTRUCTION, LLC ("MHC"), through its attorneys, Much Shelist, P.C., and for its Amended Third-Party Complaint for Breach of Contract, Contribution, Indemnification, and other Relief against Third-Party Defendant, MIDWESTERN STEEL FABRICATORS CHICAGO, LLC ("MIDWESTERN STEEL"), states as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

1. On November 19, 2024, Plaintiff, NATHAN M. TEIBEL ("Plaintiff"), filed its First Amended Complaint ("Complaint") against Defendant/Third-Party Plaintiff, MHC, and Defendants, JOHN ALAN CONSTRUCTION, INC. ("JOHN ALAN") and SCHMIDT STEEL, INC. ("SCHMIDT STEEL"), among others, seeking recovery for personal injuries allegedly sustained in a construction accident. The Complaint alleges that, on or about October 4, 2022, Plaintiff was employed as an ironworker to perform roof decking work for a construction project at 3351 Brandon Road in Joliet, Illinois (the "Premises") and was allegedly injured when he fell through an unmarked an unguarded hole in the roof under construction approximately fifty feet to the floor below (the "Incident"). A copy of Plaintiff's Complaint is attached hereto as **Exhibit A**.

2. At all relevant times, including at the time and place of the Incident, a written construction contract ("Prime Contract") was in full force and effect between 3351 Brandon Road CNT-PR, LLC ("Owner") and MHC, wherein MHC agreed to provide certain services and materials as detailed in that contract for construction of an industrial warehouse building on the Premises commonly known as CenterPoint Intermodal Center. (The Premises and related improvements are sometimes hereinafter collectively referred to as the "Project".)

3. At all relevant times, including at the time and place of the Incident, MHC was the general contractor of the Project. As part of its work on the Project, MHC entered into various subcontracts and other contracts with various third parties.

4. On or about April 5, 2022, MHC, and Third-Party Defendant, MIDWESTERN STEEL, entered into a written subcontract, wherein MIDWESTERN STEEL agreed to complete the structural and miscellaneous steel work at the Premises as part of the Project ("Subcontract"). At all relevant times, including at the time and place of the Incident, the Subcontract was in full force and effect.

5. At all relevant times, including at the time and place of the Incident, Defendant SCHMIDT STEEL was one of MIDWESTERN STEEL's subcontractors performing work on the Project.

6. At all relevant times, including at the time and place of the Incident, Defendant JOHN ALAN was one of SCHMIDT STEEL's subcontractors – in other words, a sub-subcontractor of MIDWESTERN STEEL– performing work on the Project.

7. At all relevant times, including at the time and place of the Incident, Plaintiff was an employee of JOHN ALAN, and was in the course and scope of his employment with JOHN ALAN while performing the roof decking work on the Project when the alleged Incident occurred on the Premises.

**COUNT I**
**(CONTRIBUTION – against MIDWESTERN STEEL FABRICATORS CHICAGO, LLC)**

8. MHC incorporates the allegations of Paragraphs 1-7 of the Allegations Common to All Counts by reference as if fully set forth in Paragraph 8 to this Count I.

9. At all relevant times, including at the time and place of the Incident, Third-Party Defendant, MIDWESTERN STEEL, had a legal duty to exercise reasonable and ordinary care for the safety of Plaintiff and to provide Plaintiff with a safe place to work.

10. MHC has filed an Answer and Affirmative Defenses to Plaintiff's Complaint, in which it denied and will continue to deny all material allegations thereof, and denied and will continue to deny liability to Plaintiff. A copy of MHC's Answer and Affirmative Defenses to Plaintiff's Complaint is attached hereto as **Exhibit B**.

11. Pleading in the alternative and without prejudice to the allegations set forth in its other pleadings, MHC states that the injuries and damages sustained by the Plaintiff, if any, were the direct and proximate result of one or more of the following negligent acts and/or omissions on the part of Third-Party Defendant, MIDWESTERN STEEL:

a) Failed to exercise control over the work with reasonable care, to provide Plaintiff and other workers engaged thereon with a safe place to work;

b) Failed to make a reasonable inspection of the premises and the work being done thereon, when MIDWESTERN STEEL knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to Plaintiff;

c) Failed to properly schedule, sequence, and coordinate the work on the Project, in a proper manner to provide the Plaintiff with a safe and adequate job site to perform his work;

d) Failed to adhere to and apply federal and state work regulations regarding open holes in roof construction;

e) Failed to supervise and enforce rooftop work and safety procedures;

f) Failed to provide adequate safeguards and protective equipment to prevent Plaintiff from injury;

g) Failed to warn Plaintiff of the dangerous conditions then and there existing on the rooftop when MIDWESTERN STEEL knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to Plaintiff;

h) Failed to properly train Plaintiff and other employees regarding roof openings, and/or instruct Plaintiff to recognize hazards and the procedures to be followed to minimize hazards;

i) Caused an open, unguarded, unexpected, and unmarked hole in the already-covered portion of the roof under construction;

j) Caused, required, and permitted Plaintiff to perform his work in an area that was not adequately and safely prepared for him to do so; and

k) Failed to provide Plaintiff with a safe place to work.

12. At all relevant times, including at the time of the occurrence, the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 *et seq.*, was in full force and effect and applies to the facts alleged in Plaintiff's Complaint and MHC's Third-Party Complaint for Contribution.

13. MHC has denied and continues to deny that Plaintiff's injuries and other damages, if any, were the direct and proximate result of any conduct on its part. However, in the event that judgment is entered in favor of Plaintiff and against MHC, then Third-Party Plaintiff, MHC, is entitled to contribution from Third-Party Defendant, MIDWESTERN STEEL, in an amount equal to the relative degree of fault found attributable to MIDWESTERN STEEL pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 *et seq*.

WHEREFORE, Third-Party Plaintiff, MORGAN/HARBOUR CONSTRUCTION, LLC, prays that in the event judgment is entered against it and in favor of Plaintiff, that judgment be entered in MHC's favor and against Third-Party Defendant, MIDWESTERN STEEL, in an amount equal to the relative degree of fault found attributable to MIDWESTERN STEEL in causing Plaintiff's injuries and other damages, together with its costs in bringing this action.

**COUNT II**
**(INDEMNIFICATION – against MIDWESTERN STEEL FABRICATORS CHICAGO, LLC)**

14. MHC incorporates the allegations of Paragraphs 1-7 of the Allegations Common to All Counts by reference as if fully set forth in Paragraph 14 to this Count II.

15. At all relevant times, including at the time and place of the Incident, the Prime Contract between Owner and MHC was in full force and effect. A copy of Article 3 (Indemnification Provisions) of the Prime Contract is attached hereto as **Exhibit C** – a full and complete Prime Contract is voluminous and can be made available upon request.

16. At all relevant times, including at the time and place of the Incident, the Subcontract was in full force and effect between MHC and MIDWESTERN STEEL. A copy of the Subcontract is attached hereto as **Exhibit D**. The roof decking work was part of MIDWESTERN STEEL's scope of work under the Subcontract. (See Ex. D, p. 11).

17. In furtherance of its work under the Subcontract, MIDWESTERN STEEL subcontracted a portion of its steel roofing work to SCHMIDT STEEL.

18. In turn, SCHMIDT STEEL subcontracted a portion of its steel roofing work at the Premises to JOHN ALAN, Plaintiff's employer.

19. At all relevant times, including at the time and place of the Incident, Plaintiff was in the course and scope of his employment with JOHN ALAN and was allegedly injured while performing the roof decking work on the Project at the Premises.

20. At all relevant times, including at the time and place of the Incident, MIDWESTERN STEEL had a legal duty to exercise reasonable and ordinary care for the safety of Plaintiff and to provide Plaintiff with a safe place to work.

21. MHC has filed an Answer and Affirmative Defenses to Plaintiff's Complaint, in which it denied and will continue to deny all material allegations thereof, and denied and will continue to deny liability to Plaintiff. (See Ex. B).

22. Pleading in the alternative and without prejudice to the allegations and denials set forth in its answers and other pleadings, and in addition to the negligent acts and/or omissions on the part of MIDWESTERN STEEL which have been asserted above in MHC's Count I for Contribution against Third-Party Defendant, MIDWESTERN STEEL, MHC states that in the event it is found liable for the injuries and damages sustained by Plaintiff, which liability it continues to deny, it will also be as a direct and proximate result of one or more of the following negligent acts and/or omissions of Third-Party Defendant, MIDWESTERN STEEL:

a) Failed to exercise control over the work with reasonable care, to provide Plaintiff and other workers engaged thereon with a safe place to work;

b) Failed to make a reasonable inspection of the premises and the work being done thereon, when MIDWESTERN STEEL knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to Plaintiff;

c) Failed to properly schedule, sequence, and coordinate the work on the Project, in a proper manner to provide the Plaintiff with a safe and adequate job site to perform his work;

d) Failed to adhere to and apply federal and state work regulations regarding open holes in roof construction;

e) Failed to supervise and enforce rooftop work and safety procedures;

f) Failed to provide adequate safeguards and protective equipment to prevent Plaintiff from injury;

g) Failed to warn Plaintiff of the dangerous conditions then and there existing on the rooftop when MIDWESTERN STEEL knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to Plaintiff;

h) Failed to properly train Plaintiff and other employees regarding roof openings, and/or instruct Plaintiff to recognize hazards and the procedures to be followed to minimize hazards;

i) Caused an open, unguarded, unexpected, and unmarked hole in the already-covered portion of the roof under construction;

j) Caused, required, and permitted Plaintiff to perform his work in an area that was not adequately and safely prepared for him to do so; and

k) Failed to provide Plaintiff with a safe place to work.

23. The Prime Contract required each subcontractor to assume the entire liability for all personal injury and claims of personal injury suffered by their own employees injured in connection with the Project work. (Ex. C, Par. 3.2, 3.3, 3.4).

24. Under the Subcontract, MIDWESTERN STEEL assumed and agreed to discharge all of its duties, responsibilities, and obligations of MHC under the general contract documents to the extent the work is undertaken pursuant to and specific to the Subcontract. (Ex. B, Par. 1). Further, MIDWESTERN STEEL agreed to be bound by the Subcontract documents, including the Prime Contract, “to the extent they relate in any way to the work to be performed by” Midwestern Steel (or its subcontractors). (Ex. D, Par. 1).

25. It is clear from the plain and unambiguous language of the Prime Contract and Subcontract that the indemnification provisions of the Prime Contract flow down to each subcontract, including the Subcontract, and all subcontractors (and sub-subcontractors) are required to be bound by those terms.

26. At all relevant times, including at the time and place of the Incident, Paragraph 3 on Page 18 of the Midwestern Subcontract was in full force and effect, which provides, in pertinent part:

> INDEMNIFICATION. To the fullest extent permitted by law, the Subcontractor shall defend, indemnify, and hold harmless the Owner, **<u>general Contractor</u>**, Architect, Architect’s consultants, and agents and employees of any of them **from and against claims, damages, losses and expenses, including but not limited to attorney’s fees arising out of or resulting from the performance of**

> **Subcontractor's work under this subcontract, but only to the extent caused in whole or in part by negligent acts or omission of the Subcontractor, the Subcontractor's Subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder**.

(Ex. D, P. 18, Par. 3; see also, Ex. D, P. 1, Par. 2).

27. As such, the Prime Contract and Midwestern Subcontract require MIDWESTERN STEEL to indemnify MHC for Plaintiff's alleged damages or personal injuries sustained while performing work on the Project as a direct and proximate result of the aforementioned negligent acts or omissions of MIDWESTERN STEEL. A tender of MHC's defense has been sent to MIDWESTERN STEEL, seeking MIDWESTERN STEEL and/or its insurer to defend and indemnify MHC related to the complaints brought by Plaintiff in this matter.

28. As stated above, MHC has denied and continues to deny that Plaintiff's injuries and other damages, if any, were the direct and proximate result of any conduct on its part. However, in the event that judgment is entered in favor of Plaintiff and against MHC, which liability it continues to expressly deny, then MHC is entitled to indemnification from Third-Party Defendant, MIDWESTERN STEEL, in an amount equal to the costs of defense, including reasonable attorneys' fees, and any loss, cost or damage for which MHC is found liable, except to the extent that MHC is found to be solely liable, in causing Plaintiff's alleged injuries, pursuant to the Prime Contract and Midwestern Subcontract.

WHEREFORE, Defendant/Counter-Plaintiff, MORGAN/HARBOUR CONSTRUCTION, LLC, prays that in the event judgment is entered in favor of Plaintiff, and against MHC, although the right to said judgment is expressly denied, that judgment be entered in favor of Third-Party Plaintiff, MHC, and against Third-Party Defendant, MIDWESTERN STEEL, in an amount equal to the costs of defense, including reasonable attorneys' fees, and any loss, cost

or damage for which MHC is found liable, unless MHC is found to be solely liable in causing Plaintiff's injuries, along with such further relief that this Court may consider just and proper.

**COUNT III**
**(BREACH OF CONTRACT – against MIDWESTERN STEEL FABRICATORS CHICAGO, LLC for Failure to Procure Insurance and Flow-Down Indemnity )**

29. MHC incorporates the allegations of Paragraphs 1-7 of the Allegations Common to All Counts by reference as if fully set forth in Paragraph 29 to this Count III.

30. At all relevant times, the Prime Contract between Owner and MHC required that all subcontractors and lower-tier subcontractors performing work on the Project be bound by indemnification obligations in favor of the Owner and MHC and maintain insurance coverage meeting specified minimum requirements, including commercial general liability insurance, workers' compensation insurance, and contractual liability coverage, naming the Owner and MHC as additional insureds.

31. Under the Subcontract, MIDWESTERN STEEL expressly agreed to assume and discharge all of MHC's duties and obligations under the Prime Contract to the extent related to its scope of work, and further agreed that all subcontractors and sub-subcontractors retained by Midwestern would be bound by those same obligations. (Ex. D, Par. 1).

32. Pursuant to the Subcontract and Prime Contract, MIDWESTERN STEEL was required to ensure that any subcontractors, sub-subcontractors, and specialty contractors it retained — including, but not limited to SCHMIDT STEEL and JOHN ALAN — executed written agreements containing indemnification provisions in favor of the Owner and MHC and maintained insurance coverage in compliance with the Prime Contract and Subcontract, including coverage reasonably acceptable to MHC. (Ex. D, Par. 1; See also, Ex. "B" to Ex. D, Par. 1.j-m., et Par. 3).

33. MIDWESTERN STEEL breached these contractual obligations by, among other things:

a. Failing to require SCHMIDT STEEL and JOHN ALAN to enter into written subcontracts containing indemnification provisions flowing down the Prime Contract indemnity obligations in favor of the Owner and MHC;

b. Failing to require SCHMIDT STEEL and JOHN ALAN to procure and maintain insurance meeting the coverage limits and terms required by the Prime Contract and Subcontract;

c. Failing to obtain additional insured coverage for MHC under the policies of SCHMIDT STEEL and JOHN ALAN; and

d. Allowing SCHMIDT STEEL and JOHN ALAN to perform work on the Project without verifying compliance with the contractual insurance and indemnity requirements.

34. As a direct and proximate result of MIDWESTERN STEEL's breaches, MHC has been deprived of the contractual risk transfer and insurance protection it was entitled to receive, and has incurred and will continue to incur damages, including but not limited to:

a. defense costs and attorneys' fees incurred in this action;

b. uncovered liability exposure;

c. loss of insurance coverage and indemnity rights; and

d. costs and expenses incurred in pursuing contractual risk transfer from Midwestern and its subcontractors.

35. As stated above, MHC has denied and continues to deny that Plaintiff's injuries and other damages, if any, were the direct and proximate result of any conduct on its part. However, in the event that judgment is entered in favor of Plaintiff and against MHC, which liability it continues to expressly deny, then MIDWESTERN STEEL's breaches were material and have substantially impaired the contractual benefits MHC was entitled to receive under the Subcontract and Prime Contract.

WHEREFORE, Defendant/Counter-Plaintiff, MORGAN/HARBOUR CONSTRUCTION, LLC, prays that in the event judgment is entered in favor of Plaintiff, and against MHC, although the right to said judgment is expressly denied, that judgment be entered in favor of Third-Party Plaintiff, MHC, and against Third-Party Defendant, MIDWESTERN STEEL, for all damages resulting from its breach of contract, including defense costs, consequential damages, interest, attorneys' fees as permitted by law and contract, and such other relief as this Court deems just and proper.

**MORGAN/HARBOUR CONSTRUCTION, LLC**

By: *___/s/ Sean M. Wagner___*
One of its Attorneys

Sean M. Wagner (#6314209)
Patrick B. Barnett (#6326570)
**Much Shelist, P.C.**
191 North Wacker Drive | Suite 1800
Chicago, Illinois 60606
(312) 521-2000
swagner@muchlaw.com
pbarnett@muchlaw.com

## CERTIFICATE OF SERVICE

Sean M. Wagner, an attorney, certifies that on February __, 2026, he caused ***DEFENDANT MORGAN/HARBOUR CONSTRUCTION, LLC'S AMENDED THIRD-PARTY COMPLAINT FOR BREACH OF CONTRACT AND OTHER RELIEF AGAINST MIDWESTERN STEEL FABRICATORS CHICAGO, LLC*** to be electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division by using the CM/ECF system, which will send notification of such filing to all parties of record.

***Attorneys for Plaintiff, Nathan M. Teibel***
Theodore L. Stacy
Ted Stacy Law Office
258 W US Highway 6
Valparaiso, IN 46385
attorneyted@mac.com

***Add'l Attorneys for Defendant, Morgan/Harbour Construction, LLC***
Mathew K. Hargrave
Lindsey A. Avalos
Fritz V. Wilson
Aiden Edward-Ammar
Best, Vanderlaan & Harrington
200 N. LaSalle St., Ste. 2600
Chicago, IL 60601
mhargrave@bestfirm.com
lavalos@bestfirm.com
fwilson@bestfirm.com
aammar@bestfirm.com
E-Service is accepted only at: eservice@bestfirm.com

***Attorneys for Defendant, 3351 Brandon Road CNT-PR, LLC***
Dean M. Athans
Keti Mebuke
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
dean.athans@wilsonelser.com
keti.mebuke@wilsonelser.com

***Attorneys for Defendant, Sullivan Roofing, Inc.***
Joshua S. Patrick

Jeremy N. Boeder
KENNEDYS CMK LLP
30 S. Wacker Drive, Suite 3650
Chicago, IL 60606
Joshua.Patrick@kennedyslaw.com
Jeremy.Boeder@kennedyslaw.com

***Attorneys for Defendant, Schmidt Steel, Inc.***
Amy Hemmingsen
Urgo & Nugent, LLC
140 South Dearborn Street, Suite 1600
Chicago, IL 60603
ahemmingsen@urgoandnugentllc.com

***Attorneys for Defendant, John Alan Construction, Inc.***
James P. Kendzior
Hennessy & Roach, P.C.
70 W Madison St., Ste. 1100
Chicago, IL 60602
jkendzior@hennessyroach.com

***Attorneys for Defendant, State Mechanical Services, LLC***
James F. Clayborne
Michael L. Wagner
Clayborne & Wagner, LLP
525 W. Main Street, Suite 105
Belleville, Illinois 62220
jclayborne@claybornewagner.com
mwagner@claybornewagner.com

***Attorneys for Third-Party Defendant, Midwestern Steel Fabricators Chicago, LLC***
Jason E. Hunter
LITCHFIELD CAVO, LLP
303 West Madison, Suite 300
Chicago, IL 60606
hunter@litchfieldcavo.com

*/s/ Sean M. Wagner*